THORP *against* BURLING AND OTHERS.

THIS was an action of *trover* for two boxes of *platillas*, tried before Mr. Justice *Yates* at the *New-York* sittings, in *April* last.

The plaintiff, who is a merchant taylor in the city of *New-York*, and to whom the property in question belonged, employed a cartman to carry the two boxes of platillas to his shop, but not being able, on account of the size of the boxes, to get them in through the door of his shop or house, he requested the cartman, who was his nephew, to carry them to his own house, and keep them until the next day, when he would break up the boxes. The cartman, without the knowledge or direction of the plaintiff, put them in his stable, where he locked them up.

A clerk of *Adamson*, one of the defendants, with *Burling*, *Duncan*, and *Roberts*, three others of the defendants, applied to the police-office for a warrant to take the goods, as having been wrongfully taken from *Adamson*, but the warrant was refused. Two of the police-officers, however, went with *Burling*, *Duncan*, and *Roberts*, and the clerk of *Adamson*, to the stable where the goods were deposited, and one of the police-officers, at the request of one of the defendants, went for a cartman to take away the goods, and brought *Woodruff*, one of the defendants, a cartman, who took the goods on his cart and carried them to the store of *Adamson*, and delivered them there. *Burling*, *Duncan*, and *Roberts*, the other defendants, were present all the time, and countenanced the proceedings.

The plaintiff demanded the goods of *Roberts*, who said he knew nothing about them. No demand was made of *Woodruff*, or of the other defendants. It appeared, however, that when *Woodruff* went to take away the goods from the stable, there was a large assemblage of people there, and *Roberts* told a person, who was a witness in the cause, that he was present, and went with *Burling* and *Duncan* to seize the goods; and the witness strongly believed that *Duncan* told him the same thing.

The judge was of opinion, that the goods being at a stable, a place where they would not, in the ordinary course of business, be found, and a large collection of people assembled there,

Where a person, having a generalproperty in goods, delivers them to his agent to keep for him, and the goods are taken out of the possession of the agent by third persons, the person having the general property may maintain *trespass* or *trover* for the goods against such person.

Where *A.*, a cartman, at the request of *B.*, went with him to the stable of *C.*, and took goods there deposited, and put them on his cart, and carried them away, under circumstances sufficient to put him on his guard, as to the legality of the taking of the goods, it was held that the cartman was equally liable with *B.* to an action of *trover* for the goods, at the suit of the owner.

*Woodruff*, the cartman, ought to have been on his guard, as to taking the goods, and that it was a *tortious* taking in him, and a conversion in itself, and that no demand was necessary to be proved.

*Adamson* and *Duncan* being dead, a verdict for the plaintiff was found by the jury, against *Roberts, Burling*, and *Woodruff*.

A motion was made to set aside the verdict, and for a new trial, and the case was submitted to the court without argument.

SPENCER, J. delivered the opinion of the court. There can be no doubt of the plaintiff's right to maintain *trover* in this case, so far as respects his title. Indeed, he could have brought *trespass*, for he had the general property in the goods, and gave only a bare authority to the first cartman to carry the goods to his own house, to keep until the next day. The first cartman had no interest or claim to hold the goods, coupled with his possession; and then the rule of law applies, that the general property draws after it the possession. The plaintiff was entitled to immediate possession when the trespass was committed. (1 *Chitty's Pl.* 167. 7 *Term Rep.* 12.)

The only point worthy of consideration relates to the defendant *Woodruff*, and the question is, whether he is answerable in this action. I consider him as much a trespasser as the other defendants; he was one of the persons who removed the plaintiff's goods from the place where they had been deposited by the plaintiff's agent. It is true, he did this at the request of other persons, but he was by no means bound to obey their orders, or yield to their request. He was a voluntary agent, and an actor in an unlawful transaction. He could not but perceive that it was a hazardous enterprise, from the large assemblage of people at the spot.

I know of no protection afforded by the law to the defendant, as a cartman, on account of his public employment; he cannot claim the exemption of a ministerial officer, who has a warrant to do a lawful act from a magistrate, or court having jurisdiction to grant such warrant, in which case the officer would be bound to obey, and the law would protect him; here, the defendant was not bound to obey, and he, consequently, acted at his peril. Had the other defendants actually reduced the

goods to their possession, and had *Woodruff* then received the goods from them to carry, he would not have been liable. As the case stands, I think he certainly is responsible with the other defendants.

Motion for a new trial denied.